**Jacquelyn NEWBY, Plaintiff,**

v.

**The DISTRICT OF COLUMBIA, Defendant.**

**No. CIV. A. 98–429(SS).**

United States District Court, District of Columbia.

July 8, 1999.

William Charles Claiborne, III, Gregg David Baron, Washington, DC, for Plaintiff.

Eugene A. Adams, III, Carolann Gemski, Nadine Chandler Wilburn, Office of Corporation Counsel, Stefan Mark Lopatkiewicz, Brigitte L. Adams, Washington, DC, for Defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiff's motion for judgment as a matter of law under Fed.R.Civ.P.50. In instances where a "party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party", the Court may direct a verdict against that party. Fed.R.Civ.P. 50. See also *Murphy v. United States*, 653 F.2d 637, 640 (D.C.Cir.1981). Such is the case here.

The undisputed facts adduced before this Court during the trial are as follows:

Plaintiff, Jacquelyn Newby, was incarcerated in Southeast I at the D.C. Jail in July, 1995. Over the course of the month, prison guards forced Ms. Newby, along with other female inmates, to participate in strip-shows and exotic dancing on three occasions. The female prisoners, including Ms. Newby, wore only g-strings during the dancing and at least on one occasion danced in the nude. On each of the three dancing occasions the three prison guards on duty directed that the dancing take

place. On one occasion, male prison guards were allowed in to observe. On no occasion were supervisory prison officials present, or on duty in the area of the jail where the dancing took place. The number of inmates housed in this section of the jail at the time numbered between eighty and one-hundred.

Bonita Pryor, a former inmate in the D.C. Jail in July 1995 testified that she refused to participate in the strip-shows. On either July 26th or July 27th of 1999, Ms. Pryor was beaten by a prison guard. Even though the reason for the beating is in dispute, (Ms. Pryor says it was because she refused to dance, the defendants say it was for other reasons) the City government concedes it was improper for such a beating to have taken place. Another female inmate, Ms. Shawnez Williams, testified without contradiction that she participated in the dancing against her will out of fear of physical retaliation from prison guards if she refused.

During the month of July, 1995, Ms. Newby also engaged in a sexual relationship with a prison guard, Quida Graham. The nature of this relationship included private meetings in an empty cell where the two would fondle and kiss one another. Such meetings which occurred on more than one occasion are concededly against the law.[1]

On December 13, 1994 United States District Judge June L. Green, issued an Opinion in *Women Prisoners of the D.C. Dept. Of Corrections v. District of Columbia*, 877 F.Supp. 634 (D.D.C.1994). In her opinion, Judge Green made the following findings of fact, among others: (1) that there were incidents of sexual misconduct between prison employees and female prisoners in the D.C. Jail, the Lorton Minimum Security Annex, and the Correctional Treatment Facility; (2) that a general acceptance of sexual relationships between prison staff and inmates existed in the

D.C. Department of Corrections that created a "sexualized environment"; (3) that the District of Columbia's responses to the complaints of female inmates about the sexualized environment was inadequate; (3) that the District of Columbia did not adequately investigate complaints of sexual misconduct brought to their attention by female inmates. Based on these findings Judge Green found the District of Columbia violated the Eighth Amendment of the U.S. Constitution by subjecting the women prisoners in their custody to cruel and unusual punishment as well as 42 U.S.C. § 1983 by maintaining a governmental custom of sexual harassment in the three D.C. Correctional facilities (including the City jail which is the facility at issue in this case), notwithstanding the existence of official policies prohibiting such behavior.

The District of Columbia has a duty to provide those under its custody a safe place of incarceration. *See* D.C.Code § 24–442 (The Department of Corrections shall be responsible for the safekeeping, care, protection, instruction, and discipline of all persons committed to such institutions). In her Opinion, Judge Green explicitly directed the city to take remedial steps to put an end to, and to prevent in the future, the gross abuses of the rights of female prisoners she found existed throughout the city's correctional system. Judge Green's opinion dated December 13, 1994 was issued just seven months before the concededly unlawful activities that occurred in this case took place. Other than putting out a policy statement regarding sexual conduct between prison guards and female inmates, and implementing certain training procedure concerning sexual harassment, the District did little else to ensure the cessation of guards engaging in proscribed activities with inmates. Most significantly, the District failed to institute a meaningful system of supervision that would provide some reasonable assurance that D.C.Code § 24–442 and the city's con-

---

1. The District of Columbia's "Anti–Sexual Abuse Act of 1994" prohibits prison officials from engaging in "a sexual act" with any person under their custody. *See* D.C. Law 10–257 (1995).

comitant other legal responsibilities would be properly discharged.

In this case the facts are not in dispute that on the three occasions in July 1995 where female inmates participated in sex shows[2] including nude and semi-nude dancing, and whose sexual encounters between correctional officer Quida Graham and Ms. Newby occurred, there were no supervisory persons present at Southeast I. Even to this date the District of Columbia has taken no steps to monitor what occurs in the jail, either by the placement of surveillance cameras or directing supervisory officials to be present with prison guards during their daily prison rounds. The District of Columbia has stated that the structure and age of the D.C. Jail prevent the installation of monitoring equipment. With the City's past history of sexual misconduct at the jail, it is incumbent upon the city to find some way to monitor the common areas at the jail.

■ With or without the use of monitoring equipment, the City clearly had the duty to assure supervisory personnel on July 1995 were present in the common areas of Southeast I, in order to safeguard the rights of the prisoners. At a minimum, the city should have made sure supervisory officials on duty took the necessary steps to have prevented the sexual dancing that occurred. The District of Columbia has the duty, not only to train its officers in matters relating to sexual contact between prison guards and inmates, but also has the responsibility to actively devise and implement a system of supervision of its first level corrections officers in accordance with the law.

■ The City has failed to explain where were its supervisory personnel at the time the "sexual dancing" was taking place. What is particularly troubling is that these horrendous activities that took place at the City jail only surfaced when Plaintiff Newby and inmate Pryor complained about them. It is inconceivable how improper sexual activities involving

the entire prison population of Southeast I, with inmates numbering between eighty and one-hundred and three prison guards on duty as well as the presence of other prison guards from other parts of the prison could have occurred with no one in a supervisory role putting an immediate stop to them. Where such conditions obtain, the City itself has clearly violated Plaintiff's constitutional and section 1983 rights. This is so whether the City can be deemed to have endorsed such violative activities or actually participated in them by failing to actively supervise its prison facilities. The District has woefully failed to carry out its responsibilities under both Federal law and the laws of the District of Columbia. Accordingly, it is liable to plaintiff Newby, for whom this Court is directing a verdict under Fed.R.Civ.P. 50. The only issue remaining for the jury to decide, and which will be submitted to them, is the amount of damages to which the plaintiff is entitled.

---

2. On one occasion during the dancing the prison guards on duty ordered one of the "dancing" inmates to place a cigarette in her vagina.